This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Vernon and Willa Board appeal from the decision of the Lorain Municipal Court, which granted judgment in their favor in the amount of $400.00 on a breach of contract claim. This court affirms.
 I.
On July 17, 1997, Vernon Board ("Board") signed a contract with Jerry Lewis, d.b.a. J. L. Improvements ("Lewis"), for a new roof to be installed on the Board house at 1100 West 30th Street, Lorain. Board agreed to pay $2,450 for Lewis to install a new roof on the home. Approximately one week later, Lewis began the work and he completed the job a few days later. Board himself got up on the roof and inspected the job in the presence of Lewis. Board expressed dissatisfaction with the work after it was completed, and he requested inspection by several members of the building division of the City of Lorain. In October 1997, the regional manager for CertainTeed, the manufacturer of the shingles, noted that there were five problems with the roof installation that could potentially negate the manufacturer's twenty-five year warranty if not corrected. These five problems were minor and easily corrected. At approximately the same time a building official wrote a letter to Board notifying him that there were twelve items that needed to be corrected before the roof passed city code requirements. Those items were minor, easily correctable, and some duplicated the problems identified by CertainTeed. The building department's notice suggested that Board permit Lewis to come back to the job site and make the corrections. Board refused to do so, allegedly because Lewis refused to put into writing the procedure he would use to correct the problems.
On October 27, 1997, appellants filed an action in the small claims division of Lorain Municipal Court, asserting breach of contract and seeking the return of the contract amount of $2,450. Later the case was transferred to the regular docket in the municipal court and an amended complaint was filed. In the amended complaint, appellants sought $15,000 in compensatory damages and the same amount in punitive damages.
The case proceeded to a bench trial in January and April 2000, and the judge awarded appellants $400, the cost for repairing the roof as outlined above. Appellants filed a timely appeal, assigning four errors.
 II.
ASSIGNMENTS OF ERROR:
 The trial court erred and ruled against the manifest weight of the evidence when it did not consider Plaintiff's testimony and other witness's [sic] testimony that Defendant was to provide written procedures for correcting the defective roofing areas.
 The trial court erred and ruled against the manifest weight of the evidence when it did not consider the testimony of all of Plaintiff's [sic] experts as to the extent of the deficiencies.
 The trial court erred and applied the incorrect measure of damages when it only considered Defendant's testimony of remedy for the deficiencies.
 The trial court erred and incorrectly applied the law when it ruled that Plaintiff prevented Defendant from performance of the contract.
Appellants' second and third assignments of error essentially charge that the trial court's decision was against the manifest weight of the evidence. Appellants assert that the trial court "did not consider" certain testimony which supported their case. However, they offer no evidence to support this assertion. Thus, we assume that appellants seek to challenge the weight that the court gave to the evidence.
"When evaluating whether a judgment is against the manifest weight of the evidence in a civil context, the standard of review is the same as that in the criminal context." General Tire Inc. v. Mehlfeldt (Jun. 23, 1999), Summit App. No. 19269, unreported, at 5, citing Frederick v. Born
(Aug. 21, 1996), Lorain App. No. 95CA006286, unreported, at 14. In determining whether a criminal conviction is against the manifest weight of the evidence:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the [judgment].
State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175; see, also State v. Otten (1986),33 Ohio App.3d 339, 340.
Appellants offered the testimony of James Chorak a roofer with over twenty years of experience. Chorak testified that he gave Board an estimate to remove the new roof and to replace the roof. The estimate for this work was $4,843. Chorak also testified that he gave Board an estimate for repairing the problems with Lewis' installation job. Chorak did not testify how much it would cost to do the repair. Chorak also testified that it would probably be cheaper to rip off the entire roof and install a new roof. Chorak did not testify that it was necessary to rip off the roof installed by Lewis in order to install a satisfactory roof.
Dennis Pastron of the building division of the City of Lorain testified to eight deficiencies in Lewis' roof installation that Pastron observed on September 30, 1997.[1] Pastron testified that these problems could be easily corrected. James Butzier, the territory manager for CertainTeed, testified that there were five problems with the installation, all easily corrected, which could compromise the roof's twenty-five year warranty if the roof failed at one of the problem areas. Butzier stated that if the five problems were corrected, the roof would be fully warranted. Butzier testified that the corrections could be made in four hours, but he could not put a dollar figure on the cost of the repairs. Lewis himself testified that he could easily make the needed corrections in four to five hours, at a cost of $300 to $400.
Lewis also testified that he offered on several occasions to make the corrections but that Board would not permit him on the property to make the corrections. Lewis testified that Board insisted that Lewis provide Board with a written procedure for the repairs, which procedure should be spelled out by CertainTeed. Lewis testified that Board never asked Lewis to write out his own procedure for repairing the problems. Board testified that he insisted that Lewis provide written procedures about how the problems would be corrected. Board also testified that he did not trust Lewis to correct the problems properly, notwithstanding that the city building officials advised Board that Lewis could make the repairs quite simply, and notwithstanding that the city would again inspect the repairs. Board admitted that he would not let Lewis back to make the repairs.
The weight of the evidence supported the trial court's conclusions that Lewis did improperly install the roof, but that the problems to be corrected were minor and could be accomplished for approximately $400. The evidence supported the conclusion that there were at most twelve items to be repaired, but that all of these items involved minor repairs. Appellants offered a witness who had provided both an estimate to entirely remove and replace the roof at a cost of $4,843 and an estimate to repair the roof. A reasonable inference of this witness' testimony is that the roof could be repaired. There was no testimony that a total removal and replacement of the roof was needed. Other witnesses fixed the time for repair at approximately four hours, and Lewis gave the only evidence as to the cost, which was between $300 and $400.
This court cannot conclude that the trial court's judgment in favor of appellants in the amount of $400 is a manifest miscarriage of justice requiring reversal. Appellants' second and third assignments of error are overruled.
The first and fourth assignments of error deal with the issue of whether appellants reasonably insisted that Lewis provide a written procedure about how he would repair the roof. The trial court's order stated that the "Plaintiffs have prevented the defendant from correcting the problem and thus cannot stay that they have a defective roof due to the Defendant's conduct." Nonetheless, the court awarded money damages in appellants' favor. Appellants have not demonstrated to this court how they were prejudiced by the trial court's resolution of the issue of the written procedure. Had the trial court found that appellants' insistence on a written procedure from Lewis was reasonable, the trial court would have found that Lewis had failed to properly install the roof, and the court would have ordered Lewis to either correct the problem or pay for the corrections. In their appellate brief, appellants concede that they were entitled to one of two remedies, to permit Lewis to fix the problem, or to hire another to fix the problems and be reimbursed by Lewis. By awarding appellants the amount needed to repair the problems, the trial court essentially ordered the second remedy. Thus, appellants' first and fourth assignments of error are overruled.
Having overruled appellants' assignments of error, we affirm the judgment of the trial court.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Lorain Municipal Court, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ___________________________ WILLIAM R. BAIRD
 FOR THE COURT
BATCHELDER, P. J., SLABY, J., CONCUR.
[1] A letter dated February 6, 1998, from another city building official written to Board, stated that there were twelve items that did not comply with either the building code or the manufacturer's specifications. These items duplicated those testified to at trial. The author of this letter did not testify, but the letter was authenticated as part of the building department's business records. The letter advised Board, "[y]our refusal to allow [Lewis] to make the required repairs, leaves us no choice but to place the burden of corrections on you."